UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FELECIA S. GARRETT, | ) | No. 11 B 15966 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling is the motion of chapter 11 debtor Felecia S. Garrett to compel creditor Wells Fargo Bank, N.A. to vote to accept Garrett's third amended plan of reorganization dated March 6, 2013. The court construes the motion as requesting (1) enforcement of a settlement agreement between Garrett and Wells Fargo on the treatment of Wells Fargo's claim and (2) disallowance of Wells Fargo's section 1111(b) election.

For the reasons that follow, the motion will be granted. The settlement agreement will be enforced, the section 1111(b) election will be disallowed, and Wells Fargo will be barred from objecting to confirmation under section 1129(b).

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). Matters involving the administration of the estate, the confirmation of plans, and the adjustment of the debtor-creditor relationship are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O). The court's jurisdiction to enforce a settlement agreement in the context of this case is discussed below. *See* discussion *infra* at 7-8.

## 2. Facts

The following facts are drawn from the parties' papers and the court's docket and are undisputed.

Felecia Garrett owns a number of investment properties, including an apartment building located at 6404-06 South Troy Street in Chicago. The Troy Street property is subject to the mortgage of Wells Fargo Bank, N.A., securing a claim of $364,672.83.

Garrett filed her chapter 11 petition on April 14, 2011. In the months that followed, she managed to work out her differences with most of her secured creditors. She was unable to reach a resolution with Wells Fargo, however, because Wells Fargo and she disagreed about the value of the Troy Street property.

On April 24, 2012, Garrett filed a motion under Bankruptcy Rule 3012, Fed. R. Bankr. P. 3012, to value the Troy Street property at $125,000. If the Troy Street property had a value of $125,000, section 506(a)(1) of the Code would bifurcate Wells Fargo's claim, giving Wells Fargo a $125,000 secured claim and a $239,672.83 unsecured claim. *See* 11 U.S.C. § 506(a)(1). Because the unsecured claim would not have to be paid in full, this bifurcation would make it easier for Garrett to keep the Troy Street property and pay off Wells Fargo under a plan.

The motion was presented on May 2, 2012, but was continued to June 13, 2012, for a status hearing. At the June status hearing, Garrett's counsel advised the court that Wells Fargo was contemplating filing an election under section 1111(b) of the Bankruptcy Code. (Mot. Ex. 1 at 3). If Wells Fargo made that election, its secured claim would not be bifurcated. Instead, the claim would be secured to the extent allowed regardless of the Troy Street property's value. *See* 11 U.S.C. § 1111(b)(2). Because Garrett has never objected to Wells Fargo's claim, the claim is

allowed, *see* 11 U.S.C. § 502(a), and after a section 1111(b) election would be secured up to the full amount. To keep the Troy Street property, Garrett would then have to pay the full amount of the claim under a plan. *See* 2 Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy* § 13.14[F] at 13-151 (Susan V. Kelley, ed., 2012-3 Supp.). Fearing Garrett might have to surrender the property if Wells Fargo made a section 1111(b) election, her counsel sought and received a continuance of the motion to decide what to do. (Mot. Ex. 1 at 3).

Garrett's motion was continued several more times. At a status hearing in August, her counsel reported that the parties were still at odds, "primarily" over the value of the Troy Street property. (Mot. Ex. 2 at 2). He said that "in my conversation with the creditor . . . there's been contemplation of either coming to an agreed amount of what the property is worth and a correct interest rate[,] . . . or the creditor [is] going to file an 1111(b) election." (*Id.* at 8). He suggested setting a deadline for Wells Fargo to make up its mind "because I would not want to go through valuation hearings and then have an 1111(b) election once we get to that point." (*Id.*). Rather than set a deadline or a date for a hearing, however, the court continued the motion once more to allow the parties to have "productive conversations." (*Id.* at 11).

Counsel for the parties then exchanged a series of emails that resulted in a resolution. In an email to Garrett's counsel sent on August 31, 2012, Wells Fargo's counsel wrote that the bank had "decided to not file the section 1111(b) election. Instead, they want plan treatment at $300,000 @ prime + 2%." (Mot. Ex. 3). A few days later, Garrett's counsel responded: "Now that [Wells Fargo] has indicated no 1111(b) will be filed we can deal with the valuation question. . . . Our suggestion is that we proceed to hearing on my 3015 [*sic*] Motion for the Court to determine valuation. However, my client is willing to accept whatever the Court decides on

Document      Page 4 of 12

valuation." (Mot. Ex. 4). Garrett's counsel continued: "Is [Wells Fargo] willing to make the same agreement?" (*Id.*). In reply, Wells Fargo's counsel accepted Garrett's counteroffer: "I am OK with going ahead with the motion to determine value. I will want an opportunity to submit my appraisal." (*Id.*). She did not quarrel with the understanding of Garrett's counsel that "no 1111(b) will be filed." (*Id.*).

Several days after this exchange, and with a September 12 status hearing looming, Garrett's counsel wrote again: "Any developments regarding your client's position?" (Mot. Ex. 5). Wells Fargo's counsel answered that she had "the solution." (*Id.*). She continued: "Since we both agree that the judge will make the determination on the value of the property, let's skip the hearing & both give the judge our appraisals & tell him to pick the number. How does that sound?" (Mot. Ex. 5).

The email exchange ends with that question. At the September 12 status hearing, however, Garrett's counsel explained that as a result of negotiating an "agreement on [Wells Fargo's] portion of the plan," the parties had arrived at the interest rate and the term of payments to Wells Fargo under the plan. The only question remaining was the value of the property. (Mot. Ex. 6 at 2). Garrett's counsel added that the parties had "decided to say that both our clients are willing to live with whatever the court decides the value of the property is." (*Id.* at 3). When the court offered to set Garrett's Rule 3012 motion for a hearing, however, counsel said that the parties had "talked about cost cutting ways of trying to do this," one of which entailed simply submitting the competing appraisals to the court. (*Id.* at 4-5). The court accepted this "paper trial" approach (*id.* at 5) and asked the parties to submit a joint stipulation attaching the competing appraisals (*id.* at 7, 10). Wells Fargo's counsel agreed, responding: "That works for

me." (*Id.* at 5).

On October 19, 2012, the parties accordingly filed a Joint Stipulation of Facts signed by counsel for both sides. (Dkt. No. 133). Not only did the Joint Stipulation attach the appraisals, it also set out the parties' agreement to resolve their dispute over plan treatment. The parties stipulated that Garrett's Second Amended Chapter 11 Plan, the version of the plan then on file, proposed to "bifurcate the claim of Wells Fargo Bank, N.A. into secured and unsecured portions," and that the parties had "spent considerable time negotiating the treatment of [the claim] in the Third Amended Chapter 11 Plan which will be filed after a ruling by the Court on [the Rule 3012 motion]." (*Id.* ¶¶ 6, 7). The Stipulation then continued:

> The parties have agreed that whatever the Court determines to be the value[,] that amount will be paid at prime (at the time the Third Amended Plan is filed) plus 2% (pursuant to Till)[1] and will be paid over 23 years from the effective date of the confirmed Chapter 11 Plan. Once a determination of the amount of the value of the real estate is determined a payment amount will be determined by a loan calculator by the parties and the parties have agree[d] on the treatment of Wells Fargo N.A. in the Third Amended Chapter 11 Plan.

(*Id.* ¶ 7).

On November 14, 2012, the court issued an oral ruling on the long-pending Rule 3012 motion. (Mot. Ex. 7). The court noted that the parties had

> declined an evidentiary hearing and . . . instead submitted a short stipulation of facts with dueling real estate appraisals attached. The debtor's appraisal values the property at $125,000, the bank's at $300,000. The parties concede that each appraiser is a qualified expert and rather than present testimony ask the court to decide the property's value based solely on the appraisals.

(*Id.* at 2). After an analysis of the two appraisals, the court explained that neither one was

---

[1]   The reference is to *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

-5-

"convincing." (*Id.* at 9). Based on "all the available data," however, the court found the correct value was "closer to the debtor's value than to the bank's" and valued the Troy Street property at $165,000. (*Id.* at 10-11).

About three weeks after the court's ruling, Wells Fargo filed a certification of election to have its claim in Garrett's case treated under section 1111(b). (Dkt. No. 144).

Garrett submitted her third amended plan on March 6, 2013. (Dkt. No. 160). The March 6 plan treats the Wells Fargo claim by bifurcating it into a $165,000 secured claim (using the value the court determined in granting the Rule 3012 motion) and a $199,672.83 unsecured claim. Wells Fargo's $165,000 secured claim is the only claim in Class 1C. Garrett proposes to pay the secured claim in full with interest at 5.25% over twenty-three years. The remaining unsecured claim is classified with other unsecured claims and will be satisfied with payments totaling 8.3% of the allowed claim amount, payable over thirty-six months beginning forty-nine months after plan confirmation.

On March 15, 2013, Wells Fargo filed an objection to the March 6 plan because the plan bifurcates Wells Fargo's claim into secured and unsecured portions despite the section 1111(b) election. (Dkt. No. 163). Believing the section 1111(b) election violated the parties' agreement about the treatment of Wells Fargo's claim, Garrett now moves to compel Wells Fargo to vote to accept the March 6 plan.

### 3. Discussion

Garrett's motion will be construed as a motion to enforce a settlement agreement and will be granted. Wells Fargo and Garrett agreed that Wells Fargo's secured claim would be treated in the plan as bifurcated under section 506(a)(1), with the determination of the secured portion – a

determination dependent on the value of the collateral – left to the court. With that agreement, Wells Fargo waived its right to make a section 1111(b) election. Wells Fargo could not later renege on the agreement and resort to section 1111(b) when the valuation of the collateral turned out to be lower than expected. The section 1111(b) election will be disallowed.[2]

Federal courts have the power to enforce settlement agreements if there is a jurisdictional basis to do so. *Holmes v. Potter*, 552 F.3d 536, 538 (7th Cir. 2008). A federal court has jurisdiction to enforce a settlement reached in an action before it when the action is still pending. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995); *Leibowitz v. Trebels*, No. 12-cv-1536, 2012 WL 5559554, at *3 (N.D. Ill. Nov. 14, 2012). Here, not only is Garrett's bankruptcy case still pending, but the settlement agreement Garrett wants enforced is integral to the confirmation of her proposed plan. The court has jurisdiction to enforce a settlement reached in the midst of a bankruptcy case for the same reason that it has jurisdiction over the bankruptcy case itself.[3]

---

[2] This is the appropriate relief. Garrett asks the court to compel Wells Fargo to accept the March 6 plan, but Wells Fargo did not agree to accept the plan. It agreed only to plan treatment based on the bifurcation of its claim under section 506(a)(1). Voting to accept the plan and electing to have a secured claim treated on a fully secured, non-recourse basis are two different decisions. *See* 9 *Collier on Bankruptcy* ¶ 3014.01[4] at 3014-5 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) (noting "[e]lection (or non-election) does not constitute a vote one way or the other on a plan or an acceptance of treatment under a plan."). Wells Fargo's agreement to a specific treatment of its claim precludes its objection to confirmation under section 1129(b), but there may be other grounds for objection, and Wells Fargo can always decline to accept the plan. The parties' agreement is enforced, then, by disallowing the section 1111(b) election and barring Wells Fargo from objecting to confirmation under section 1129(b), not by compelling acceptance of the plan.

[3] Much of the recent controversy in this circuit over the ability of federal trial courts to enforce settlement agreements stems from attempts by district courts to enforce settlement agreements after the civil actions that produced them had ended and the actions had been dismissed. *See, e.g., Dupuy v, McEwen*, 495 F.3d 807, 809-10 (7th Cir. 2010). Since Garrett's bankruptcy case is still pending and the agreement concerns the treatment of a creditor's claim in a plan confirmation of which has yet to be considered, *Dupuy* and the other decisions are not

There is no jurisdictional obstacle to enforcement of the agreement between Wells Fargo and Garrett.[4]

State law governs "the formation, construction, and enforcement of settlement agreements" arising out of federal actions. *Magallanes v. Illinois Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008); *see also Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Under Illinois law, an agreement will be enforced if its terms are reasonably definite and certain. *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 564 (7th Cir. 2012). Illinois courts recognize that "email exchanges can constitute a binding agreement." *Transportation Ins. Co. v. Island Food Stores, Ltd.*, 09-CV-7193, 2011 WL 209920, at *4 (N.D. Ill. Jan. 20, 2011) (internal quotation and citation omitted). Illinois courts also hold that a facially complete written agreement supersedes all prior agreements, oral or written, on the same subject. *See WFC Commodities Corp. v. Linnco Futures Grp., Inc.*, No. 98 C 1354, 1998 WL 834374, at *3 (N.D. Ill. Nov. 25, 1998) (discussing Illinois law); *Magnus v. Lutheran Gen. Health Care Sys.*, 235 Ill.App.3d 173, 182, 601 N.E.2d 907, 914 (1st Dist. 1992).

Here, there is no question that Wells Fargo agreed to treatment of its claim in Garrett's

---

relevant.

[4] Some courts hold that if one of the parties to a settlement agreement is a debtor in possession, the agreement will not be enforced if the bankruptcy court did not approve the settlement in accordance with Bankruptcy Rule 9019. *See, e.g., Rafool v. The Goldfarb Corp. (In re Fleming Corp.)*, Nos. 03-82408, 04-8166, 2008 WL 682428, at *1-3 (Bankr. C.D. Ill. Mar. 7, 2008) (refusing to enforce settlement that required but did not receive bankruptcy court approval); *In re Sparks*, 190 B.R. 842, 844 (Bankr. N.D. Ill. 1996) (same). But the bankruptcy court need not approve a settlement under Rule 9019 unless the "underlying action" the debtor seeks to accomplish is one that needs court approval. *See In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 551-52 (Bankr. N.D. Ill. 1994). No Code provision requires the bankruptcy court to approve an agreement between a debtor in possession and a secured creditor to give the creditor's claim certain plan treatment. That the court did not approve the agreement between Garrett and Wells Fargo is therefore no impediment to its enforcement.

plan through bifurcation under section 506(a)(1) and also agreed to waive a section 1111(b) election. The initial agreement was embodied in an email exchange. In her August 31, 2012 email, Wells Fargo's counsel notified counsel for Garrett that Wells Fargo would "not file the section 1111(b) election" and instead wanted plan "treatment at $300,000" with an interest rate of prime plus 2%. (Mot Ex. 3). Garrett's counsel countered that Wells Fargo's decision not to proceed under section 1111(b) meant the parties could now "deal with the valuation question," implicitly rejecting a $300,000 valuation of Wells Fargo's secured claim. At no point did Wells Fargo indicate that valuation of the property was non-negotiable, let alone that the bank was reserving its right to make a section 1111(b) election later. On the contrary, the parties subsequently consented to have the court arrive at a valuation based on the submission of a stipulation and the competing appraisals.

Although the email exchange is an agreement between the parties sufficient to warrant relief, the later Joint Stipulation constituted a written agreement on the same terms that superseded the email agreement. *WFC Commodities*, 1998 WL 834374, at *3; *Magnus*, 235 Ill.App.3d at 182, 601 N.E.2d at 914. Despite its infelicitous wording, the Joint Stipulation indicates clearly that the parties "have agree[d] on the treatment of Wells Fargo N.A.['s claim] in the Third Amended Plan." (Dkt. No. 133, ¶ 7). It also specifies what that treatment will be: "The parties have agreed that whatever the Court determines to be the value [of the Troy Street Property,] that amount will be paid at prime (at the time the Third Amended Plan is filed) plus 2% (pursuant to Till) and will be paid over 23 years from the effective date of the confirmed chapter 11 Plan." (*Id.*).

The Joint Stipulation constitutes a facially complete written agreement with reasonably

definite and certain terms. Its meaning is clear: the claim of Wells Fargo will be treated in Garrett's third amended plan (to be filed after the decision on Garrett's Rule 3012 motion) as a bifurcated claim under section 506(a)(1), using the court's valuation of the Troy Street property as the amount of the secured claim. The section 1111(b) election Wells Fargo later made to have the claim treated without bifurcation and secured up to the full amount breached the parties' agreement. Having consented to one treatment of its claim in Garrett's plan, Wells Fargo could not resort to section 1111(b) after an unfavorable decision on the Rule 3012 motion and elect a different treatment. The parties' agreement will be enforced and the section 1111(b) election disallowed.

In opposing Garrett's motion, Wells Fargo argues that Garrett did not "file anything showing that Wells Fargo Bank, N.A. waived the right to file the Section 1111(b) election." (Resp. at 2). To the contrary, Garrett submitted the August 31, 2012 email in which Wells Fargo's counsel said the bank would not make the election and wanted treatment of its claim as a secured claim with a particular value. Wells Fargo concedes the email was submitted but fixes on its use of the word "instead," argues that "instead" means "as a substitute," and contends that the bank never received its suggested substitute: a $300,000 valuation of the Troy Street property. (*Id.*). But Wells Fargo did not insist on that value; rather, it consented in later emails to Garrett's proposal that the court arrive at a value. And even if the August 31 email had been the last one, the later Joint Stipulation, which Wells Fargo's counsel signed, explicitly contained the bank's agreement to have its claim treated under section 506(a) with the determination of value left to the court. The Joint Stipulation superseded the earlier email agreement.

Wells Fargo then argues as a fallback that its agreement with Garrett was only to have the

court value the property, not the claim. "The value of the claim and the value of the property are not the same thing," Wells Fargo asserts. "[A] Section 1111(b) election deals with the claim, not the value of the property." (*Id.*).

Wells Fargo is right about section 1111(b) but wrong about the agreement with Garrett. The agreement was one to value the property for a specific purpose: bifurcation under section 506(a)(1) and treatment of the claim on that basis in Garrett's plan. There is no question that under section 506(a)(1), a creditor has a secured claim only up to the value of the collateral securing the claim; the rest is unsecured. *See United Air Lines, Inc. v. Regional Airports Improvement Corp.*, 564 F.3d 873, 875 (7th Cir. 2009); *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007). Had Wells Fargo been entitled to make a section 1111(b) election, the value of its secured claim would have been the full amount of the claim, entitling Wells Fargo to payment of that amount.[5] But Wells Fargo agreed to plan treatment on a different basis, one inconsistent with section 1111(b). The distinction Wells Fargo draws is no help to it here.

Because Wells Fargo settled its differences with Garrett by agreeing to have its secured claim treated in Garrett's plan through bifurcation under section 506(a)(1), Wells Fargo waived its right to make a section 1111(b) election and have its claim treated as secured up to the full amount. The section 1111(b) election must be disallowed.

---

[5] Even with a section 1111(b) election, of course, Wells Fargo would not have been entitled to payment of the full amount of its claim with reasonable interest over a reasonable time under section 1129(b)(2)(A)(i)(II), 11 U.S.C. § 1129(b)(2)(A)(i)(II). Only the portion of the claim supported by collateral value would have been treated on that basis. *See* M. Jonathan Hayes & Roksana D. Moradi, *The Section 1111(b) Election: a Primer*, 3 Cal. Bankr. J. 755, 760 (2011) (citing *First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 293 (B.A.P. 9th Cir. 1998)). For purposes of determining that portion, the valuation of the Troy Street Property would have remained relevant even after a section 1111(b) election.

### 4. Conclusion

For these reasons, the motion of debtor Felecia S. Garrett to compel Wells Fargo Bank, N.A., to vote to accept Garrett's third amended plan of reorganization dated March 6, 2013 is construed as a motion to enforce a settlement agreement between Garrett and Wells Fargo on the treatment of Wells Fargo's claim and is granted. The section 1111(b) election of Wells Fargo is disallowed. Wells Fargo is barred from objecting to plan confirmation under section 1129(b). A separate order will be entered consistent with this opinion.

Dated: May 29, 2013

_____
A. Benjamin Goldgar
United States Bankruptcy Judge